IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| CRYSTAL WHITMAN, | * | CHAPTER 7 |
|     Debtor | * | |
| | * | CASE NO.: 1:05-bk-03918MDF |
| | * | |
| LARRY L. HALDEMAN, | * | |
|     Plaintiff | * | |
| | * | |
| v. | * | ADV. NO.: 1:05-ap-00134 |
| | * | |
| CRYSTAL WHITMAN, | * | |
|     Defendant | * | |

## OPINION

**Procedural History**

Before the Court is the Complaint of Larry L. Haldeman ("Haldeman"), the former spouse of Crystal Whitman ("Debtor"), seeking a determination that certain marriage-related debts to him are non-dischargeable under 11 U.S.C. § 523(a)(5) and (15). On February 3, 2006, I granted Debtor's motion for summary judgment on Haldeman's request for relief under § 523(a)(5). The matter proceeded to trial on the issue of dischargeability under § 523(a)(15), which provides that a debt between spouses arising from their divorce may be discharged if the debtor is unable to pay or if discharging the debt would serve as a benefit to the debtor more than it would operate as a detriment to the creditor spouse. For the reasons set forth in this Opinion, I find that the debt owed to Halderman is dischargeable.[1]

---

[1] I have jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(L). This Opinion and Order constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7052.

1

## Factual Findings

Haldeman and Debtor were divorced by a state court decree issued on April 18, 2005. The divorce decree required Debtor to reimburse Haldeman for his payment of post-separation marital debt in the amount of $11,382.18. The decree also provided that Debtor was to assume sole responsibility for the payment of joint marital debts owed to Pennsylvania State Employees Credit Union ("PSECU") in the amount of $5,787.77 and to First USA/Bank One Visa ("First USA") in the amount of $8,686.68.[2]

Debtor failed to comply with the provision in the divorce decree requiring her to pay Haldeman $11,382.18 in satisfaction of the marital debt, and she failed to assume responsibility for making payments on the PSECU or First USA accounts. Because Haldeman also was liable to PSECU and First USA on the accounts, after the divorce Haldeman assumed responsibility for making the monthly minimum payments to protect his credit score.[3]

The personal and financial histories of Debtor and Haldeman are similar. Both parties were born in 1958. From 1978 to 2001, Debtor was employed by the Commonwealth of Pennsylvania, Department of Public Welfare, as an administrative assistant. (Exhibit P-2). From 1989 until 2002, Haldeman was employed by Farfield Company as an electrical/mechanical contractor. (Exhibit P-2). At the time of the trial, Debtor was employed by Associated Wholesale, Inc. as a "distributor assistant," and Haldeman was employed by Medastat USA of

---

[2] In her schedule of unsecured nonpriority debt, Debtor lists a claim of $11,383.00 held by Haldeman, a claim of $5,788.00 held by PSECU, and a claim of $8,687.00 held by First USA.

[3] After the parties' divorce but before the hearing on this matter, Haldeman had Debtor's name removed as a joint owner on the credit card accounts to prevent her from using them to incur further debt.

Louisville, Kentucky as a deliveryman. Debtor's employer offers overtime pay, but she has not availed herself of this opportunity. In the past, Haldeman earned extra income by bartending and by installing pipe insulation, but he was not employed in either endeavor at the time of the trial.

The parties' comparative income and retirement asset values are as follows:

|                     | Debtor         | Haldeman       |
|---------------------|----------------|----------------|
| Monthly net income  | $ 1,593.00[4]  | $ 1,600.00     |
| Retirement assets   | $92,520.55[5]  | $73,369.00[6]  |

As of the date of the trial, the parties' relative monthly expenses were:

|                          | Debtor  | Haldeman |
|--------------------------|---------|----------|
| Rent                     | $ 500   | $ 550    |
| Heat and Electric Service| $ 150   | $ 235[7] |
| Food                     | $ 290[8]| $ 200    |
| Phone and Cable Service  | $ 105   | $ 40     |
| Laundry                  | $ 90    | $ 0      |
| Clothing                 | $ 80    | $ 20     |

---

[4]This figure is comprised of hourly wages earned by Debtor as a distributor assistant for Associated Wholesale, Inc. in the amount of $1,229.00 per month, plus monthly payments from the Pennsylvania State Employees Retirement System (PSERS) in the amount of $364.00.

[5]Evidence was introduced that Debtor had $92,520.55 in her PSERS account as of the date of the trial.

[6]The evidence and testimony indicated that Haldeman had approximately $43,889.00 in a pension account and approximately $29,480.00 in a 401(k) plan as of the date of the trial.

[7]On her schedule I, Debtor entered $150.00 on the line for "electricity and heating fuel." Haldeman testified that his monthly heating bill was $190.00 and his monthly electric bill fluctuated between $40.00 and $50.00 per month. To keep the expense comparison uniform, I averaged the electric bill figures and then added the result to the heating bill figure.

[8]Debtor testified that she spends between $280.00 and $300.00 per month.

3

| | | |
|---|---|---|
| Credit cards | $ 0 | $ 240[9] |
| Vehicle payments | $ 0 | $ 0 |
| Vehicle maintenance | $ 220 | $ 40 |
| Vehicle insurance | $ 60 | $ 50 |
| Life Insurance | $ 0 | $ 12 |
| Haircuts & Misc. | $ 80 | $ 0 |
| Pet food | $ 30 | $ 0 |
| TOTAL | $ 1,605[10] | $ 1,387 |

**Discussion**

Haldeman asserts that Debtor has the ability to pay his claim and that if Debtor is permitted to discharge these obligations the hardship imposed on him will be greater than the burden imposed on Debtor. The provision of the Bankruptcy Code on which Haldeman relies, section 523(a)(15),[11] provides as follows:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt -
>
>> (15) not of a kind specified in section 523(a)(5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless--
>>
>>> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependant

---

[9] This credit card payment is the monthly amount Haldeman pays on the First USA obligations that were assigned to Debtor under the divorce decree.

[10] Debtor's schedules reported expenditures of $80 per month on recreation. Under the circumstances, this budgeted amount is not reasonable.

[11] On April 20, 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), P.L. 109-8, §256, 119 Stat. 23, 11 U.S.C. §101 *et seq* was signed into law. Although BAPCPA made significant changes to the treatment of domestic support obligations and equitable distribution awards in bankruptcy, these provisions did not become effective until October 17, 2005 and do not affect the resolution of this Complaint.

4

> of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
>
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. §523(a)(15).

Two of the obligations at issue arise from the divorce court's order that Debtor pay parties other than Haldeman. It is widely recognized, however, that debts owing to a third party may be characterized as marital obligations and, therefore, within the purview of § 523(a)(15). *In re Gibson*, 219 B.R. 195, 205 (B.A.P. 6th Cir.1998); *In re Mannix*, 303 B.R. 587, 596 (Bankr. M.D. Pa. 2003) (Chief Judge Thomas); *In re Shreffler*, 319 B.R. 113, 120 (Bankr. W.D. Pa. 2004); *In re Burckhalter*, 389 B.R. 185, 191 (Bankr. D. Colo. 2008); *In re Williams*, 2008 WL 3895538 (Bankr. N.D. Ohio); *In re Finkey*, 2008 WL 2165979 (Bankr. D. Neb.); *In re Rogers*, 2008 WL 1740248 (Bankr. E.D. Tenn). In the within case, when the divorce court entered the decree that assigned responsibility for the payment of the joint PSECU and First USA debts to Debtor, a new liability running from Debtor to Haldeman was created. Accordingly, the debts owed to PSECU and First USA, as well as the debt owed directly to Haldeman, comprise the total non-support marital debt Debtor owes to Haldeman under the decree.

Section 523(a)(15) provides that once the non-filing former spouse demonstrates that the obligation was incurred in connection with a divorce decree, the burden shifts to the debtor spouse to prove either that the debtor is unable to pay the debt or that the benefit of discharging the debt outweighs the detriment to the creditor spouse of not receiving the payment. *In re*

*Cameron,* 243 B.R. 117, 121 (M.D. Ala. 1999) (citing *In re Gamble,* 143 F.3d 223, 226 (5th Cir.1998); *In re Crosswhite,* 148 F.3d 879, 884-87 (7th Cir. 1998) (other citations omitted)). The debtor must show that she is unable to pay the debt or that the balance of the equities weighs in her favor by a preponderance of the evidence. *In re Endo*, 378 B.R. 281, 291 (Bankr. W.D. Wash. 2006); *In re Jodoin*, 209 B.R. 132 (B.A.P. 9th Cir. 1997). *See Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661(1991). If the debtor supplies sufficient proof on either issue, then the burden shifts back to the creditor spouse to prove that the debtor has the ability to pay and that the benefit to the debtor of discharging the debt is outweighed by the detrimental consequences to the former spouse. *In re Shreffler*, 319 B.R. at 117.

If a debtor demonstrates that she does not have the ability to pay a marital debt, the debt will be determined to be dischargeable without requiring the debtor to prove that the benefit she will receive if the debt is discharged outweighs the detriment to her former spouse. *In re Gilpin*, 287 B.R. 921 (Bankr. C.D. Ill. 2002). Under the "ability to pay" test, the primary factor to be considered is the amount of disposable income available to pay the debt. *In re Shurelds*, 265 B.R. 891, 895 (Bankr. N.D. Ohio 2001). Disposable income is essentially a mathematical determination arrived at by deducting a debtor's reasonable expenses from her income and available property. *In re Mannix,* 303 B.R. at 597; *In re O'Shaughnessy*, 301 B.R. 24 (Bankr. N.D. Iowa 2003); *In re Erd*, 282 B.R. 620, 625-26 (Bankr. N.D. Ohio 2002). Most courts agree that disposable income should be determined as of the trial date, but both present and future prospects for repayment from disposable income may be considered. *Davis v. Cox,* 356 F.3d 76, 97 (1st Cir. 2004); *In re Cameron*, 243 B.R. at 125 (citations omitted); *In re Feldmann*, 220 B.R. 138, 145-46 (Bankr. N.D. Ga. 1998). The language of § 523(a)(15)(A), as it existed prior to the enactment of BAPCPA, was parallel to §1325(b), which encouraged many courts to adopt the

disposable income test used in chapter 13 proceedings to analyze a debtor's ability to pay under § 523(a)(15)(A). *In re Ballard*, 2001 WL 1946239, *16 (Bankr. E.D. Va.) (citing cases).

To meet her burden of proof, Debtor relies on the information provided on schedules I and J, augmented by her testimony at trial. As the Factual Findings demonstrate, Debtor's reasonable monthly expenses are virtually equal to her income. While Debtor may be able to whittle marginal amounts from some of her monthly expenditures (e.g. $80.00 per month for hair care and $80.00 per month for clothing), a reduction in these expenditures will not generate sufficient disposable income to enable her to pay Haldeman's claim in full. Generally, Debtor's expenses are modest. She does not have a car payment because she currently is driving a 1992 vehicle that was purchased for her by her father. Based on her testimony, she frequently incurs expenses to repair and maintain the vehicle. She does not own a home or any other asset of significant value, other than her interest in her state retirement account.

Haldeman established that Debtor could earn additional income by working overtime, but he failed to demonstrate that these earnings would be sufficient to satisfy Haldeman's claim. He also established that Debtor's state pension, with a present value of approximately $92,520.55, is a significant resource. However, Haldeman failed to show how Debtor's state pension could be used to satisfy his claim. As part of her monthly budget, Debtor is receiving $364.00 per month from the account which is used to defray her basic expenses. No evidence was offered that she is able to receive disbursements in a greater amount. Haldeman also points to the lump-sum withdrawal of $35,829.57 that Debtor obtained from the PSERS account in February 2001. But no evidence was presented that Debtor is entitled to make further withdrawals, or even could obtain a loan against the account.

Case 1:05-ap-00134-MDF    Doc 44    Filed 11/21/08    Entered 11/24/08 07:41:23    Desc
Main Document    Page 7 of 8

Because no evidence was offered that Debtor, now or in the future, will have sufficient disposable income to satisfy the obligation to Haldeman, I am compelled to find that Debtor does not have the ability to pay her obligations to Haldeman and, thus, these debts may be discharged under § 523(a)(15(A).[12]

By the Court,

*Mary D. France*
Bankruptcy Judge

Date: November 21, 2008

*This document is electronically signed and filed on the same date.*

---

[12] My determination that Haldeman's claims are dischargeable does not challenge the findings of the state court that Debtor dissipated marital assets, deceived Haldeman and engaged in fraud to support her gambling addiction. Notwithstanding the merits of Haldeman's claim, insufficient proof was offered to support a finding that Debtor possesses the resources to satisfy the obligation.